**WISCONSIN BARGE LINE, INC., Plaintiff-Appellant,**

v.

**The BARGE CHEM 300, its tackle, apparel, furnishings, fixtures & equipment, in rem, et al., Defendants-Appellees.**

No. 75–2249.

United States Court of Appeals, Fifth Circuit.

Feb. 9, 1977.

Rehearing and Rehearing En Banc Denied March 25, 1977.

James A. George, Baton Rouge, La., for plaintiff-appellant.

Clarence A. Frost, New Orleans, La., for defendants-appellees.

Before BROWN, Chief Judge, and HILL and FAY, Circuit Judges.

FAY, Circuit Judge:

The issue presented by this appeal is whether indemnity is available after a settlement judgment when the proposed indemnitor was notified of the claim and tendered the defense but chose not to participate and could not be made a party to the original state court action due to a lack of jurisdiction. The district court denied indemnity. For the reasons set forth below, this Court finds that, if the amount of the settlement is reasonable, indemnity is proper and, therefore, reverses and remands this case to the district court for a determination of the reasonableness of the settlement amount.

The facts reveal that a crewman was working on a barge owned by appellant when appellee's barges broke away from their moorings and crashed into the tow of appellant's barge, causing injuries to the crewman. The crewman brought a Jones Act and general maritime action in the Illinois state court against appellant. In addition to answering the crewman's complaint by denying any negligence on its part, the appellant notified the appellee of the claim and requested the appellee to appear and defend the suit. The appellee never responded to appellant's request. After some discovery, the state court action resulted in a court sanctioned settlement of $30,000, plus $2418.79 for maintenance and cure payments to the crewman, attorneys fees and costs.

Appellant then filed an action in federal district court against the two drifting barges (in rem), the owner of these barges, their charterer, and the wharfinger (in personam) to indemnify it for the losses incurred in the Illinois suit. Reasoning that appellant was under no real legal obligation to settle since it found no evidence that appellant was guilty of any negligence causing or contributing to the crewman's injuries or that appellant's vessel was unseaworthy, the district court concluded that appellant was not entitled to be indemnified for the $30,000 payment it made to the crewman, but was entitled to be indemnified for the $2418.79 for maintenance and cure payments, court costs, and attorney's fees from the wharfinger (Two Twenty-Eight), the party found to be the sole and proximate cause of the accident. The district court dismissed all claims against the other defendants. Appellant disagrees with the district court's denial of indemnity for the $30,000, and thus appeals from the final judgment entered by the lower court.

Appellant contends that indemnity should be allowed since it notified the appellee of the injury, tendered the defense of the action to the appellee, and settled at a reasonable figure after actively litigating the matter in the state court which entered a Judgment Order.

Appellee submits that indemnity may not be permitted since appellant did not show that it was under any legal obligation, actual or prospective, to pay damages or that it was negligent. Even if appellant is presumed negligent or its vessel presumed unseaworthy, appellee suggests that with no evidence of degree of fault, the most appellant is entitled to is contribution under the divided damages rule, per *Cooper Stevedoring Company, Inc. v. Kopke,* 417 U.S. 106, 94 S.Ct. 2174, 40 L.Ed.2d 694 (1974).

In the proceedings below, appellee conceded that it had been notified of the casualty by wire on the date of the casualty, August 16, 1971, and notified of the Illinois action. Additionally, appellant had tendered appellee the defense of the crewman's action by attorney's letter of July 14, 1972, although appellee was not notified prior to the settlement. The district court, however, did not deem this sufficient. Its decision would require either that appellant pursue the matter to full trial and final judgment in order to support the legally-compelled-to-pay requirement or, alternatively, that appellant actually prove that it was guilty of the charges made by the crewman in the Illinois action.

This Court has recognized the right of indemnity in federal maritime cases where no contractual relationship exists between

the parties and where one tort-feasor is found to be actively negligent and the other tort-feasor is found to be only passively negligent. *Tri-State Oil Tool Industries v. Delta Marine Co.,* 410 F.2d 178 (5th Cir. 1969). Going one step further, the Sixth Circuit in *Tankrederiet Gefion A/S v. Hyman-Michaels Co., et al.,* 406 F.2d 1039 (6th Cir. 1969), after noting that the general and majority rule is that an indemnitee must show actual liability to recover against an indemnitor, held that defendants need only show potential (rather than actual) liability to recover indemnity where either (1) defendants tender the defense of the action to the indemnitor, (2) the claim for indemnity is founded upon a judgment, or (3) the defendant's claim is based on a written contract of insurance or indemnification. In *Tankrederiet,* some of the defendants settled the claims against them during the course of the trial and before any judgment was entered. The district court held that these defendants were still required to establish their actual liability to the plaintiffs before they would be entitled to indemnity from the third-party defendants. The circuit court affirmed the district court's ruling due to a fact it considered crucial, namely that although the third-party defendant had full knowledge of the litigation and knew that settlement negotiations were in process, the defendants never made a formal tender of the defense nor disclosed the settlement terms to the third-party defendants for their approval. The appellate court stated:

> All in all, we believe the position taken by the District Judge is sound. We recognize the interest the courts have in encouraging settlements. We also recognize the difficulties of requiring a party who has been engaged in contesting liability suddenly to turn about and seek to prove the truth of that which he has been denying. But the settlement itself represents a substantial change of position, and certainly the original defendant has the right to turn about and point to the facts which occasioned it.
>
> More important, however, is the fact that a tender of the defense in exchange for a hold-harmless agreement is a feasible protection for the party desiring to settle, as well as for the proposed indemnitor. It certainly seems appropriate for B, the party desiring to settle and possessing the facts pertaining to the settlement, to be required to tender C the choice of approving the settlement or of going forward with the defense in exchange for a hold-harmless agreement. We assume that such a hold-harmless agreement would constitute C's financially responsible guarantee that B would under no circumstances be forced to pay more than the sum for which it was prepared to settle. If such a tender were refused and B settled, then we think the proofs required in the subsequent suit against C would appropriately be potential liability and reasonableness of the settlement. 406 F.2d 1039, 1043.

Allowing indemnity where no tender has occurred, the court concluded, would deny the third-party defendant any opportunity to contest the defendant's liability to the plaintiff—a liability which the third-party defendant may be required to pay.

Similarly, in *Jennings v. United States,* 374 F.2d 983 (4th Cir. 1967), indemnity from C was not permitted where B settled with A without B showing actual legal liability to A, due to B's failure to notify C of the pendency of the action, settlement, or stipulations, and due to B's having stipulated that B's insured was not legally liable.

In *West Coast Terminals Co. of Cal. v. Luckenbach Steamship Co.,* 349 F.2d 568 (9th Cir. 1965), a shipowner brought an action against a stevedore to recover the amount paid in settlement of a seaman's injury claim. The court held that even if it were assumed that the seaman was contributorily negligent, the shipowner which showed that injury might have been caused in part by unseaworthiness of the vessel established its potential liability and thus it could not be said that the shipowner's settlement was unreasonable or that the shipowner was precluded from recovering from the stevedore on an indemnity contract. The shipowner had investigated the sea-

man's claim and taken depositions, tendered the defense of the seaman's claim to the stevedore company, which refused it, and settled for $40,000. The court, in allowing indemnity, stated:

> Since defense of the seaman's action was tendered to and rejected by the stevedore, and the action was thereafter settled by the shipowner in good faith, the latter need not, in this suit to recover indemnity under the stevedore's contract, prove that the shipowner was legally liable to the seaman for the amount paid in settlement . . . [citations omitted] . . . It is enough if the proof shows existence of a reasonable and good faith belief in liability of the shipowner, and that the settlement was made in good faith and for a reasonable amount under the circumstances. [citations omitted]. 349 F.2d 568, 570.

■ According to the A.L.I. Restatement of Restitution, § 76, the general rule regarding indemnity is:

> A person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity from the other, unless the payor is barred by the wrongful nature of his conduct.

Describing the conditions under which restitution is generally allowed, § 86 of the Restatement states that wherever there was a tort claim against two persons which arose from one harm and which has been discharged by one of them, that person is entitled to indemnity or contribution from the other except to the extent that the character of his conduct precludes restitution. Thus the Restatement supports appellant's position here especially since appellant "vouched in" the appellee, but appellee chose not to participate in the Illinois proceeding.[1]

■ The court below referred to *Greenville Shipbuilding Corp. v. Hartford Accident and Indemnity Co.,* 334 F.Supp. 1228 (D.C.Miss.1971), *aff'd,* 460 F.2d 1063 (5th Cir. 1972), when characterizing the settlement in the instant case as a voluntary payment notwithstanding that it was made pursuant to a Judgment Order of an Illinois state court. However, *Greenville* is distinguishable from the instant case in that in *Greenville* no suit was filed and, contrary to the written indemnity contract involved there, the indemnitee made a settlement before suit was filed and before a judgment was obtained. If suit had been filed against the indemnitee, there would have been jurisdiction over the proposed indem-

1. These rules apply whether or not the injured party has brought suit against the payor:

> If suit is not brought against the payor and he seeks restitution from a fellow tortfeasor, it is necessary for him to prove that his payment terminated or reduced a valid claim against such person. It is also necessary for him to prove that the settlement, made with the injured party was reasonable under the circumstances. If, however, after suit is brought against the payor, the indemnitor is notified and given an opportunity to defend, but fails to conduct the defense and the claim is proved to be due, its validity as to the payor and its amount are res judicata between the payor and the principal obligor. § 76, Comment f; § 86, Commend d, Restatement of Restitution.

According to the Restatement, these rules are applicable where the payor and the other tortfeasor have been sued in one action, where each of them has been sued separately, where one but not the other has been sued, and where although neither has been sued by the injured person, the liability has been discharged by one of them. § 86, Comment a. Finally, in an indemnity action, if the third person (injured party) has obtained a valid judgment in a separate action against the indemnitee, both the indemnitee and the indemnitor are bound as to the existence and extent of the liability of the indemnitee, if the indemnitee gave the indemnitor reasonable notice of the action and requested him to defend it or participate in the defense. A.L.I. Restatement of the Law of Judgments, § 107. Furthermore,

> If the indemnitor has knowledge of the proceeding and has reasonable notice to defend, the indemnitee is under no duty to make a defense, except where the relation between them is such that the indemnitee has a duty to protect the indemnitor's interests, as it may be in the case of principal and agent. The rule stated in this Section applies, therefore, even though the judgment against the indemnitee is by default or although the indemnitee does not carefully defend the action. . . . § 107, Comment f, A.L.I. Restatement of the Law of Judgments.

nitor to implead it as a third-party defendant since the potential indemnitor was a company present in any district of Mississippi. The indemnitee paid after the indemnitor clearly denied any liability, raised serious coverage questions, and advised it would not participate in a settlement.[2] In the case *sub judice,* however, a claim had actually been filed, discovery taken, the merits and potential liability evaluated, and then settlement ensued. Although the appellant could not have brought the appellee into the state court action due to a lack of jurisdiction, the appellant did notify the appellee of the claim and tender full control of the defense, which appellee chose not to accept. Thus, in the facts of the instant case, appellant's payment to the claimant could hardly be said to be "voluntary" in the sense of there being no legal liability, with the result of foreclosing indemnification.

At the outset in the usual case of an indemnity claim, the trial court would concern itself with several questions about the underlying claim including whether or not there had been notice of the accident, notice of the claim and notice of the filing of a lawsuit; whether or not there existed jurisdiction over the potential indemnitor; whether or not control of the claim and defense had been tendered; whether or not the claimant raised serious substantive issues that might have resulted in liability; the existence of fraud or collusion; entry of a final judgment by actual trial or by consent; the terms of any written indemnity agreement; and the surrounding circumstances of the payment of any settlement along with the reasonableness thereof. Under the particular facts of this case most of these issues have been resolved.

A cursory review of the record shows that this crewman's claim presented substantial issues and that the Illinois action was not frivolous. There were serious questions as to the sufficiency of a look-out, the competency of the crew, the number and location of the crewmembers, and the seaworthiness of the vessel. Recognizing the slight degree of negligence that might render a defendant liable to a Jones Act plaintiff, *Spinks v. Chevron Oil Co.,* 507 F.2d 216 (5th Cir. 1975); *Southard v. Independent Towing Co.,* 453 F.2d 1115 (3rd Cir. 1971), offers a suggestion of reasonableness to appellant's decision to settle rather than expose itself to a jury's verdict. Appellant made payment to the injured crewman and such payment was not voluntary, but rather the result of a lawsuit which, although defended by appellant, resulted in a Judgment Order against the appellant. There is no indication of fraud or collusion. Although appellant settled with the crewman rather than proceeding with a full trial, appellant did tender the defense and complete control of the action to appellee which chose not to accept. There was a sufficient legal relationship between the appellant and the appellee for the former to raise an indemnity claim against the latter, as there is almost presumptive liability when one allows its barges to float loosely down a navigable waterway. The trial court made an independent determination that the employer was not negligent nor its vessel unseaworthy, and that the wharfinger was the sole and proximate cause of the accident. Hence no contribution from the indemnitee is necessary or proper.[3] Thus, under the facts of this case, the appellant does not have to show that it was negligent or otherwise liable to the crewman and the burden

2. The policy contained a provision that the insured will not voluntarily make any payment, assume any obligation or incur any expense except first aid to others, without the prior consent of the insurer, the potential indemnitor. The policy also contained a provision that no indemnity action shall be brought until the amount of the insured's obligation to pay shall be determined either by judgment against the insured after *actual trial* or by written agreement of the insured, the claimant and the insur-

er. Further, Hartford, the proposed indemnitor, had issued a "reservation of rights" letter but had *not* refused to defend any lawsuit that might be filed.

3. The employer realized it faced serious justiciable issues and potential liability in the Illinois action which induced it to settle. This is not inconsistent with the district court's ultimate finding that the employer was not negligent.

shifts to the appellee to show that the amount of the settlement was unreasonable. Therefore, the only question that remains is whether the amount of settlement is reasonable.

That portion of the trial court's judgment denying indemnity of the $30,000 payment to the crewman is vacated and this matter is remanded for proceedings consistent with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.